Jason Carr appearing on behalf of the appellant James Allen Jahner Jr. Your Honor, this is a case that's disturbing. There's a virtual parade of horribles that is in this record. It's a disturbing record to read. It's really in its essence where the fantasy of the Internet comes to wash ashore on the hard ground of reality here. I don't have the most sympathetic client in the world. You read these instant messages and my client says all kinds of things that are disturbing that express sexual deviancy. He just doesn't come with completely clean hands to this court or to the district court. Alternatively, though, the government did all kinds of things that are disturbing in this case as well. There's no question that there's ample evidence here of inducement. There's inducement and then there's more inducement. Once again, there's very little evidence in this record that my client exhibited any predisposition towards having sex with minors prior to agency contact. So this whole case basically comes down to should this highly prejudicial material have come in and if it shouldn't have come in, was that error more harmless, more likely than not, harmful to Mr. Jahner? And I would submit that the answer to both those questions is yes, this evidence should not have come in and yes, the evidence is harmful. Therefore, this case should come back to the district court. Doesn't it rebut the defense of entrapment here? I don't think that it does, Your Honor. The only way that this evidence could have any relevancy is towards predisposition. The law is relatively clear that that predisposition must occur prior to agency contact here. All this information that we're talking about came in during the instant message chats with the undercover agent pretending to be Erica, a 14-year-old girl. So the FBI agent, Mr. Mahoney, is talking to Mr. Jahner. We have agent contact. That's when the prejudicial stuff starts coming in. But the agency never did solicit him to expose himself. He did, Your Honor. Agent Mahoney did solicit it. He said quite clearly, I look at excerpt from record, volume one. He says to the effect, come on, show it to me, you know you want to. You know you want to do it. He definitely, he's the first one who says, the agent's the first one who mentions sex. He's the first one who mentions that, who says anything about Jahner exposing himself. So neither of these parties have clean hands here, and that's important to realize. But that was presented to the jury on a question of entrapment. Exactly, and our whole defense was entrapment, and that's an important point in this case because the government is trying to argue that they needed to pile on all this cumulative evidence, the highly prejudicial pornographic photos that should prove intent. Intent was never at issue in this case at all. This is entirely an entrapment case. And I remind the Court, back before the 70s, to even run an entrapment defense, you had to concede all the elements. You don't have to do that in modern times, but still the whole essence of entrapment is I did this, but I am not, the jury should find me not guilty because of this affirmative defense which says the government created this crime rather than myself going out there and willingly engaging in this. You have to remember this is over three months worth of, this is like three months worth of contact. Hours and hours and hours and hours of instant message chats here. I mean this is, if you read all these instant message chats, you realize there's this huge relationship. There's these psychological ploys the agent's using. This man is depressed, he's a vulnerable victim, gets ensnared into this whole thing, and in reality he falls in love with this mythical Erica character. I mean it couldn't be more sad. That he thought was a 14-year-old girl. That he thought was a 14-year-old girl, exactly. Now one of the weird aspects of this case is the whole traveling, he's charged with traveling and he's charged with enticement. Traveling is a crime that once you get on the plane, it's a thought crime essentially. When you're on the plane and you're traveling under stint lines and your intent is to have sex with a minor, you are guilty at that point. What's interesting about this crime is if Erica had been a 40-year-old woman pretending to be a 14-year-old rather than an FBI agent, then John would still be guilty of the crime once he got on the plane, but he could come here and freely have sex with a 40-year-old and that wouldn't matter. So it's a very odd crime in that respect. And it's one of the reasons why entrapment is a good defense in this situation because the jury is going to be troubled by the nature of the crime because the defendant never has a time to back out. We have a guy here who has no criminal record. He's never been arrested. He's an accountant. He's in his mid-40s. There is a chance, a reasonable chance that had there been a real 14-year-old that he was presented with in person that he might have said, look, this is crazy, I can't do it. He never had that opportunity. Well, doesn't that just go to the whole charge of travel with intent to engage in a sexual act? It's an odd crime. For him to expose himself on the net there so he can be seen. Good question, Your Honor. What is the probative value of these photos of him exposing himself? And remember, there's like 16 different photos that are introduced throughout this whole trial in punctuated stages, so we never get any kind. The jury is constantly flashing these photos, constantly seeing these highly. I find them very troubling. I have the photos right here. I didn't want to look at them, but I had to. And they're disturbing photos. They are to me. But anyways, the question, does it go to show intent? Only in the vaguest sense because. . .  Why wouldn't it? Well, you have to ask yourself, Your Honor. Really what it says is I'm predisposed to expose myself on the Internet. Now, does that speak directly to the question of I'm predisposed to have sex with a 14-year-old? Is there a difference between being a sexual deviant who likes to expose yourself versus being a pedophile? Is there a direct connection there? I would submit that there isn't, that there is some attenuation in the probative value. Put that aside, though. I mean, this evidence, if I just had that going for me, I might have a much weaker case. But I have a huge other point in my favor, which is the defense counsel offered to stipulate that he sent these photos on the dates he did to stipulate the facts of occurrence that he exposed himself on this time, this time, this time, that time, throughout the chronology of these instant messages. So he made an offer to stipulate that would have sanitized this evidence, still would have had all its objective probative value, all of it, but it would have been without this highly prejudicial sexually charged element. And there is nothing that could be more prejudicial to a jury, and the majority of these jurors are females, nothing that I can imagine is more prejudicial than constantly exposing the jury to pornography, exposing female jury members to photos of a man manipulating himself on the Internet constantly. He was willing to stipulate that they would have known it anyway, right? He was willing to stipulate, and that's an important point, and that's one thing that makes this case a little different from Marino Balderrama. You know, Szymanowicz and Balderrama really provide the legal contours of how we have to analyze this case, along with Old Chief. And Marino Balderrama, he offered to stipulate that the films at issue there contain child pornography, so there's no need to show them to the jury. We're willing to stipulate that they have this content. Virtually similar to what we have here. You know, there's these photos, here's their content, we're willing to stipulate the content. The government wants to bring in the material anyways. Why do they want to show the jury the photos? Because they know it's going to promote a visceral emotional response. It's going to make the jury dislike Johnner. It's going to make the juries angry that they're having to sit there and be subjected to this pornography, and they're going to hold that against Mr. John. Now, I see I only have two minutes left for argument here, so I'd like to reserve the rest of that time for rebuttal. We're trying to hear him. Good morning. May it please the Court. I'm Justin Roberts. I'm an assistant United States attorney from the District of Nevada. I want to begin by responding to a few of the statements made by the appellant's counsel. First of all, the entire issue in this case was not entrapment. There was not an admission of the elements of the offense that the government was required to prove beyond a reasonable doubt. There's a suggestion in the argument that the only issue was entrapment. However, the offer to stipulate was an offer to stipulate to the sending of these pictures, not to the element of intent with respect to the first count of the indictment, the interstate travel with the intent to have sex with a juvenile. And there was also not an offer to stipulate to the element of the second count of the indictment, which was coercion and enticement. There's a discussion of whether or not this evidence went to the defendant's intent. The government's position is this evidence does show defendant's intent because these pictures and images were sent to a 14-year-old, or what the appellant thought was a 14-year-old over a series of three, three-and-a-half months, which culminated in a trip to Nevada to engage in a sexual act with a juvenile. The government's position is this is like photographs of a dead body in a murder case where the defendants would stipulate that the body was found and it had 14 stab wounds. Well, that is correct, Your Honor, and that's discussed at length in an old chief that jurors come to a courthouse with a certain expectation that they're going to see a narrative of how a crime occurred. And for us to have to stop and tell the jury, as is discussed in the old chief's opinion, that never mind what's behind this door, we're just going to tell you what it is, then they're left with a feeling of emptiness and may not be able to return the verdict of guilty. It's as much to show, as the old chief would suggest, a story of guiltiness as it is to prove the elements of the crime. However, the government was put to its burden of proof in this case. The defendant did not offer to stipulate to the offenses in the crime, so the only issue was not entrapment. Therefore, the court below did not abuse its discretion in allowing these images in, and the government took great pains to lessen the prejudicial nature or the unfairly prejudicial nature, if there is such a thing, by doing snapshots of videos. Several of these images were actually moving pictures of the defendant manipulating himself. The government chose to put it in still shot format and provided only several examples of it, so therefore it was not cumulative as another type of evidence. In fact, the images were of three different varieties. There were still photographs that the defendant sent, there were videos that the defendant sent, and then there was a flip album that the defendant had sent that contained songs and things of that nature. And, in fact, let me correct that there was a fourth type, which was these snap images of him on the webcam manipulating himself. Once again, what was shown was not a moving image of the webcam but a snapshot, and there's about 11, 12, or 13 of those all together over the three-and-a-half-month period that were provided not only to show the intent for the first count of the indictment but the coercion and enticement element, which is a charge that goes from the January 2002 to April 2002 time frame, and these are images sent over that time frame, all of which go to the coercion and enticement element of the second count of the indictment. Your opponent made two arguments at the start of his argument. One is that the undercover agent was the first person to raise the subject of sex in the chat room conversations. Does the government agree with that? No, Your Honor, the government does not agree with that, and it's actually in the brief at footnote two of the government's reply brief. There's a claim in the opening brief on the appellant that it was Erica, the undercover agent, who asked him to do this. The record shows that it was the appellant, Mr. Johner, who began this discussion, and then it went back and forth, and he ultimately did turn on the webcam. There were two I wanted to ask about, and they may blend into each other, but one assertion was made was that the undercover agent was the first one to raise the subject of sex. Does the government agree with that? No, Your Honor. I believe, as is outlined in the government's brief with court's indulgence. We can find that. I just wanted to know whether you agree with that. No, Your Honor, we do not agree with that. Okay. The second one was that it was the first self-exposure by the defendant was the result of an enticement by the undercover agent. Does the government agree with that? No, Your Honor. And that's footnote two in your reply? Yes, Your Honor. Okay. The defendant and the appellant has suggested that this was prejudicial material. Well, the government, of course, agrees with that. This is prejudicial material. It's prejudicial because it's probative of two separate elements of two separate offenses in the indictment. However, the analysis is whether it's unfairly prejudicial, and it invites the jury to convict the defendant on something unrelated to the offenses charged in the indictment. This evidence was direct evidence, relevant evidence of both the intent with respect to count one and the coercion and enticement prong with respect to count two. The appellant has made much of some of the cases since Old Chief that the court has reviewed, one of which is Marino Valderrama. The court there held that it was an abuse of discretion and not harmless error to have allowed in the moving pictures because contrary to Old Chief, the moving pictures were not part of a narrative of a story of the crimes that had occurred there. In fact, the court notes that they were inconsistent with the narrative. There was no evidence, circumstantial or direct, that suggested the defendant never even viewed these images. So, therefore, that case is distinguishable from the case that's before the court right now. And the Szymanowicz, if I'm pronouncing that correctly, that opinion is also not on point, as the appellant would suggest, because the court there had found that this evidence was not relevant to the offenses in the indictment. It was prejudicial and it was not even, it was not 404B. This was evidence separate and apart from evidence going to the charges in that offense, which were the Guam sex offenses that were an objective mental state offenses, which only the type of contact there was whether a reasonable person, not whether the defendant intended to have sexual contact with, that essentially aroused pleasure. The exact phrase escapes me right now. But, again, that case is distinguishable because the evidence that was presented below in this case, Your Honor, was direct evidence of the two counts in the indictment and, therefore, the government would ask that the court affirm the court below's ruling and find that the admission of the evidence was not an abuse of discretion. Can I ask a question just out of curiosity about the sentence? The sentence was 37 months? I believe it was 37, yes, Your Honor. How did that come about? Your Honor, in all honesty, I'm not quite sure how the sentence came about. I did not try the case below. My colleague Nancy Davis, now Nancy Cope, tried the case below. Thank you. Your Honor, first thing, factual clarification of the record, the first time sex is ever mentioned is by Erica on page 126 of the first volume of the EOR. First time the word sex comes out of anybody's mouth, it comes out of Erica's mouth. Regarding the enticement to get him to expose himself, they get into this conversation about different names for penises, and he comes out, what about all these different names that you could call a penis? And she says, which one will get you to show it? You know you want to, page 151. And then, eventually, he does. We know from the case law that this kind of evidence is very prejudicial. Marina Valderrama says that. Simon Ovitz says it, that there's probably no evidence that's more prejudicial than evidence that tends to indicate the defendant is a sexual deviant. Was a contested issue of fact and or law in the case your client's intent? Never. Your Honor, it was all a pure entrapment offense, and we didn't stipulate to the elements of the offense, but this is just like CODES, which is a case I cite in my reply brief, where the government wanted to bring in prejudicial evidence to show that identity of the robber. And this court said, look, that wasn't a contested issue at trial. Everybody was pretty much. This is an intent crime. It is an intent crime. And you didn't stipulate to intent? We didn't stipulate to the element. So the result of those two things, as I understand it, is the government was required to prove intent? The government had to put on a prima facie evidence of intent. But there's gobs of evidence in this record that shows intent. I mean, this pornographic material is just piling it on and piling it on. And the question is, really this comes down to does this evidence have probative value? And where do we look for to answer that? We look to Old Chief. Old Chief says the government doesn't have to accept a stipulation to a point if they need it to show evidentiary richness or narrative integrity. Jury expectations. The government stands up here and tells the court with a straight face that this jury expected to be subjected to pornographic material time and time again during this trial, that the jury would have been disappointed if the government had not subjected them to numerous pornographic salacious photographs throughout this trial. And it just does not fly. It does not comport with what Old Chief says. Marina Valderrama says Old Chief is not limited to just stipulations to elements that there are. That it does fit within the analytical framework of was this evidence probative? And we say that with the offer to stipulate that it wasn't probative, it was extremely prejudicial, and infected this whole trial, Mr. Johners should receive a new trial, one that is fair. Thank you. Thank you, counsel. Case history will be submitted. And the court will take a brief recess.
judges: Reinhardt, Siler, Hawkins